UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:04CV-488-R

REVA E. PAYNE, and                                                                                   PLAINTIFFS
LUCRETIA M. PAYNE

v.

THE COURIER-JOURNAL,
a Kentucky Company, and
Brian Bennett, Reporter                                                                              DEFENDANTS

## MEMORANDUM OPINION

Defendant has filed a motion to dismiss (Dkt. # 24).  Plaintiff responded (Dkt. # 43), Defendant replied (Dkt. # 44), and this matter is now ripe for decision.  For the reasons given below, Defendants' motion is **GRANTED**.

## BACKGROUND

Plaintiffs Reva E. Payne and Lucretia M. Payne are sisters to Thomas R. Payne, Jr., who was the first African-American recruited to play on the men's basketball team at the University of Kentucky.  Mr. Payne is currently incarcerated, and has written several children's books; his sisters allege that they own the copyrights to these books.  They further allege that Defendant Bennett and the Courier-Journal infringed their copyrights when they quoted one of these books in an article profiling Mr. Payne in an article published in that newspaper on April 4, 2001 ("Article").  They filed the instant case, *pro se*, in the United States District Court for the Central District of California, which transferred it to this Court based on the California court's lack of personal jurisdiction over the Defendants.  The California court held that the Defendants did not have the minimum contacts necessary to fall within the reach of California's long-arm statute

1

and that venue would have been proper here in the Western District of Kentucky. (Minute Order transferring case to USDC/WDKY, Attachment # 26 to Dkt. #20). Defendants have moved to dismiss the case.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## ANALYSIS

Defendants base their Motion to Dismiss on the following grounds: (i) Plaintiffs' complaint fails to state a claim for copyright infringement; (ii) Plaintiffs' complaint is barred by the applicable statute of limitations; and (iii) Defendants' Article constituted a fair use of the

book.

*Failure to state a claim*

Defendants argue that Plaintiffs' complaint fails to state a claim upon which relief may be granted because (i) the work quoted in the Article is not the same work on which Plaintiffs claim to own a copyright; and (ii) Plaintiffs failed to allege that the book quoted in the Article was registered pursuant to the Copyright Act.

There are undoubtedly minor differences between the quotations that appear in the Article and the text of the copyrighted work Plaintiffs claim has been infringed thereby. (Defendants' Memorandum in support of its Motion to Dismiss, Dkt. # 24, at 2). However, it is unclear from a review of the record whether these discrepancies result from Defendant Bennett's being given an earlier, un-edited (or later, edited) copy of the registered work or from Defendants' selection of various passages for inclusion in the Article, or both. However, for purposes of the Motion to Dismiss, the Court will view the facts in the light most favorable to Plaintiffs and assume that the quotations in the Article are from the registered work.

*Statute of Limitations*

Defendants argue that Plaintiffs' claim is barred by the applicable statute of limitations. The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). In the Sixth Circuit, a claim accrues "when a plaintiff knows of the infringement or is chargeable with such knowledge." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004) (citing *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir.1994)). The alleged infringement in this case occurred on April 4, 2001, the date the story about Mr. Payne

3

was published in The Courier-Journal. Plaintiffs did not file their complaint until June 24, 2004, which falls outside the three-year period from the date of the alleged infringement. Plaintiffs claim that they did not know of the infringement until they received a copy of the article in mid-July of 2001, which would put the complaint within the three-year statute of limitations if the claim accrued at the time of Plaintiffs' alleged actual knowledge. Defendants argue that, since Plaintiffs' mother (from whom Plaintiffs ultimately received the Article in July) and brother were both aware of the Article (because both were interviewed for it, and it was apparently Plaintiffs' mother who provided the book to Defendant Bennett), Plaintiffs were chargeable with knowledge of the existence of the Article at the time it was published. Defendants further argue that the fact that Plaintiffs did not get a *copy* of the article until July does not mean that the claim did not accrue in April. For this proposition, Defendants cite *Prather v. Neva Paperbacks, Inc.*, where the court held "that the mere fact that plaintiff was unable to procure a copy of the [allegedly infringing material] is insufficient to ... toll the statute of limitations." 446 F.2d 338, 341 (5th Cir. 1971). In that case, the plaintiff alleged that the statute of limitations should have been tolled because the defendants had concealed the existence of the allegedly infringing material by failing to include it in a discovery response in an earlier case. Further, the plaintiff asked specifically about the allegedly infringing material during the course of that discovery, indicating an knowledge of the potential claim for copyright infringement if not a certainty. This situation is not quite on all fours with the one of Plaintiffs in this case, because we have no admission from Plaintiffs that they knew about the article or the fact that the article contained excerpts from their brother's book. Although the question is a close one, the Court believes that Plaintiffs were not fairly chargeable with knowledge of the Article at the time of its publication

4

and that their claim was brought within the time required by § 507(b).

*Fair Use*

Finally, Defendants argue that the Article constitutes a "fair use" of the copyrighted work. This determination is generally considered to be a mixed question of law and fact. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561, 105 S.Ct. 2218, 2230 (1985) (citing *Pacific & Southern Co. v. Duncan*, 744 F.2d 1490, 1495, n.8 (11th Cir. 1984)). However, because the Article and the work which it allegedly infringed are in the record, the Court may determine as a matter of law whether the Article is a fair use of the copyrighted work. *Id.* Section 107 of the Copyright Act provides as follows:

> Notwithstanding the provisions of section 106, the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--
>     (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>     (2) the nature of the copyrighted work;
>     (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>     (4) the effect of the use upon the potential market for or value of the copyrighted work.

The Court will address each factor in turn.

*Purpose and character of the use*

News reporting, which the parties agree is the "purpose and character" of the Article, is one of the examples listed in the statute of a purpose which could constitute "fair use" under the Act. The Supreme Court has noted that "[t]his listing was not intended ... to single out any particular use as presumptively a 'fair' use." *Id.* at 561. The court in that case also said that "[t]he fact that a publication was commercial as opposed to nonprofit is a separate factor that

5

tends to weigh against a finding of fair use." *Id.* at 562. "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Id.* (citing *Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.*, 503 F. Supp. 1137, 1144 (S.D.N.Y. 1980)). In *Campbell v. Acuff-Rose Music, Inc.*, the Supreme Court explained that "[t]he central purpose of this investigation is to see ... whether the new work merely "supersede[s] the objects" of the original creation, ... or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative." 510 U.S. 569, 579, 114 S.Ct. 1164, 1171 (internal citations omitted). Further, the court said, "...the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.* Although the use was a commercial one, given that Defendants "transformed" the work in that they put it in an autobiographical context not inherent in the copyrighted work itself[1] and that the use was for news reporting purposes, this factor weighs in favor of finding that the Article was a fair use of the copyrighted work.

*Nature of the copyrighted work*

Plaintiffs and Defendants debate the exact nature of the copyrighted work. Defendants assert that it is at least partially autobiographical and draw a parallel between the redemption of the giant in the story and the life story of the author, Thomas Payne. Plaintiffs assert that no such autobiographical aspect was intended or exists in the story; that it is a "fairy tale," and also

---

[1] See next section for further discussion of the nature of the work.

6

a "Christian Book, intended to instill moral and spiritual values in the youth [who read it]." (Plaintiffs' Response to Defendant's Motion to Dismiss, Dkt. # 48, at 11). Although the Court sees and acknowledges the parallel drawn by defendants, the Court will view the facts on this matter in the light most favorable to the Plaintiffs, as is required in the context of a Motion to Dismiss. One relevant fact about the book is that it is currently unpublished. "[T]he scope of fair use is narrower with respect to unpublished works ... because the author's right to control the first public appearance of his expression weighs against such use of the work before its release." *Harper & Row*, 471 U.S. 564. This factor, then, weighs against finding the Article to have been a fair use of the copyrighted work.

*Amount and Substantiality of the Portion Used*

The test of the amount and substantiality of the portion used is primarily a question of how much of the *copyrighted* work has been used in the allegedly infringing work. *Id.* at 565 ("a taking may not be excused merely because it is insubstantial with respect to the *infringing* work." (emphasis in original)). However, "the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression." *Id.* Here, the allegedly infringing material constitutes a small portion of the Article - two lines at the beginning, and about seven lines at the end. Although the exact wordings vary slightly between the Article and the copyrighted work, the "amount" of the portion of the copyrighted work used is more significant - seven of ten sentences from the first page, one of six sentences from the fourth page, one of three sentences from the sixth page, and one of eight

sentences from the seventh page.[2]

The substantiality of the portion, however, is significantly less than its size might indicate. The portion taken does not reveal the "moral of the story" as it is described in the preface to the copyrighted work: "the meaning of Love" and "that everyone who has love in their hearts and does good to other, (sic) knows Heaven." (P. II). The portions quoted do not reveal *why* the main character changed and do not mention "Heaven." Approaching this story, as Plaintiffs do, from the perspective of a fairy tale intended to teach Christian moral and spiritual values, Defendants' publication of the portions of the copyrighted work could not realistically supplant the copyrighted work itself. Parents wishing to teach their children the moral and spiritual values the book espouses would not read them the Article in lieu of the copyrighted work. The third factor, then, weighs in favor of finding the Article to have been a fair use.

*Effect of the use upon the copyrighted work*

The final factor the Court must evaluate is the effect of the use upon the potential market for or value of the copyrighted work. This "factor is undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. 566. Here, the work is unpublished and actual damage does not exist; instead, the Court will look at the potential damage. The only possible commercial damage done to the copyrighted work by the article is its publication of the fact that the work was written by Thomas Payne, who is currently incarcerated.[3] This is not the kind of

---

[2]The Article also contains one sentence which does not appear in the copyrighted work but was apparently in the work given to Defendant Bennett.

[3]The Article itself paints a relatively sympathetic picture of Mr. Payne, so it is not a foregone conclusion that any parent who read it would decide not to buy the copyrighted work to read to their child, though some parents probably would so decide given the nature of the crimes of which Mr. Payne was convicted.

damage contemplated by the Copyright Act; if the Article had simply given the title of the book and asserted that it was written by Mr. Payne, no copyright infringement action would accrue. Therefore, this factor weighs in favor of finding the Article to have been a fair use of the copyrighted work.

Given that three of the four factors, including the most important factor, weighed in favor of a finding of fair use, the Court finds as a matter of law that the Article constituted a fair use of the copyrighted work under Section 107.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**. An appropriate order shall issue.